**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

GINTER LOGISTICS SERVICE CO, LTD.,                    07 civ. 8677 (LAP)(KNF)

                                        Plaintiff,

        -against-

ACH FREIGHT FORWARDING, INC., JIMIN
ZHOU a/k/a JIMMY ZHOU, XIAO JI HE
d/b/a PACIFIC JIN AN TRADING, INC.
and XIN MIAO, INC.,

                                        Defendants

----------------------------------------------------------------x


**MEMORANDUM OF LAW OF DEFENDANTS**
**ACH FREIGHT FORWARDING INC. AND**
**JIMIN ZHOU a/k/a/ JIMMY ZHOU**
**IN SUPPORT OF THEIR MOTION**
**TO DISMISS PLAINTIFF'S COMPLAINT**


LAW OFFICES OF BING LI, LLC
1350 Broadway, Suite 1001
New York, NY 10018-0947
(212) 967-7690
Attorneys for Defendants
JIMIN ZHOU a/k/a/ JIMMY ZHOU
and ACH FREIGHT FORWARDING INC.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

PRELIMINARY STATEMENT .................................................................... 1

STATEMENT OF FACTS ............................................................................ 1

ARGUMENT ................................................................................................ 4

      POINT I
      STANDARD GOVERNING RULE 12(b)(6) MOTION
      TO DISMISS .......................................................................................... 4

      POINT II
      PLAINTIFF'S FOURTH CAUSE OF ACTION FOR
      CONVERSION MUST BE DISMISSED. ............................................. 6

            A.     Plaintiff Did not Have Any Legal Ownership,
                  Possession or Control over the Merchandise
                  and the Moving Defendants Had Lawful
                  Dominion and Control over the Merchandise. ................................ 6

            B.     The Conversion Claim Is Nonetheless
                  Duplicative of the Breach of Contract
                  Cause of Action. ............................................................................ 9

      POINT III
      PLAINTIFF'S FIFTH CAUSE OF ACTION FOR
      FRAUDULENT INDUCEMENT MUST BE DISMISSED. ................. 11

      POINT IV
      THE COMPLAINT MUST BE DISMISSED AS AGAINST
      ZHOU PERSONALLY. ........................................................................ 14

CONCLUSION ............................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**STATUTES AND RULES**

Federal Rules of Civil Procedure 12(b)(6) ............................................................. 1
N.Y. Uniform Commercial Code section 1-201 .................................................... 9
N.Y. Uniform Commercial Code section 2-705 .................................................... 9
N.Y. Uniform Commercial Code section 2-707 .................................................... 6,8
N.Y. Uniform Commercial Code section 7-307 .................................................... 6,7
N.Y. Uniform Commercial Code section 7-308 .................................................... 2

**CASES**

AD Rendon Communications, Inc. v. Lumina Americas, Inc.
No. 04 Civ. 8832 (KMK), 2007 WL 2962591 (Oct. 10, 2007, S.D.N.Y.) .............. 6,9,10,11

Alliance Group Servs., Inc. v. Grassi, Co.
406 F.Supp.2d 157 (D.Conn. 2005) ...................................................................... 10,11

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.
493 F.3d 87 (2d Cir. 2007) ................................................................................... 5

Bell Atlantic Corp. v. Twombly
127 S.Ct. 1955 (2007) .......................................................................................... 4,5,11,13

Bridgestone/Firestone v. Recovery Credit Services
98 F.3d 13 (2d Cir. 1996) ..................................................................................... 12,13

Command Cinema Corp. v. VCA Labs, Inc.
464 F.Supp.2d 191 (S.D.N.Y. 2006) .................................................................... 10

Conley v. Gibson
355 U.S. 41 (1957) ............................................................................................... 4,5

Cougar Audio, Inc. v. Reich
No. 99 Civ. 4498 (LBS), 2000 WL 420546 (S.D.N.Y. April 18, 2000) .............. 12

Dyncorp. v. GTE Corp.
215 F.Supp.2d 308 (S.D.N.Y. 2002) .................................................................... 12

Erickson v. Pardus
127 S.Ct. 2197 (2007) .......................................................................................... 5

Hochman v. Major Auto Companies, Inc.
14 A.D.3d 653 (2d Dept. 2004) ........................................................................... 10

Irwin Sales, Inc. v. Prodigy Services Corporation
No. 99 Civ. 10878 (DC), 2000 WL 978014 (July 17, 2000 S.D.N.Y.) .................. 12

Iqbal v. Hasty
490 F.3d 143 (2d Cir. 2007) ................................................................... 5

Joan Hansen & Company, Inc. v. Everlast World's Boxing Headquarters Corp.
296 A.D.2d 103 (1st Dept. 2002) .......................................................... 14,15

Johnson & Johnson v. Guidant Corp.
No. 06 Civ. 7685 (GEL), 2007 WL 2456625 (S.D.N.Y. Aug. 29, 2007) ............. 5

Manning v. Utils. Mut. Ins. Co.
254 F.3d 387 (2d Cir. 2001) ................................................................... 12

Mills v. Polar Molecular Corporation
12 F.3d 1170 (2d Cir. 1993) ................................................................... 14

Moses v. Martin
360 F.Supp.2d 533(S.D.N.Y. 2004) ........................................................ 6

Oscar Prods., Inc. v. Zacharius
893 F.Supp. 250 (S.D.N.Y.1996) ............................................................ 14

Papas' June Music, Inc. v. McLean
921 F.Supp. 1154 (S.D.N.Y. 1996) ......................................................... 12

Priolo Communs. v. MCI Telecomms. Corp.
248 A.D.2d 453 (1st Dept. 1998) ........................................................... 10

Puma Indus. Consulting, Inc. v. Daal Assocs., Inc.,
808 F.2d 982 (2d Cir. 1987) ................................................................... 14

Reade v. SL Green Operating P'ship
817 N.Y.S.2d 230 (App.Div. 2006) ......................................................... 10

Rolls-Royce Motor Cars, Inc. v. Schudroff
929 F.Supp. 117 (S.D.N.Y. 1996) .......................................................... 10

Sudul v. Computer Outsourcing Services
868 F.Supp. 59 (S.D.N.Y. 1994) ............................................................ 12,13

Telecom International America, Ltd. v. AT&T Corp.
280 F.3d 175 (2d Cir. 2001) ................................................................... 11

Town of Haverstraw v. Columbia Elec. Corp.
237 F.Supp.2d 452 (S.D.N.Y. 2002) ...................................................................... 12

Wolf v. National Council of Young Israel
264 A.D.2d 416 (2d Dept. 1999) .......................................................................... 10


**TREATISES**
Linda J. Rusch & Frederick H. Miller, 2 Hawkland UCC Series § 1-707:2
(February 2007) ..................................................................................................... 8

## PRELIMINARY STATEMENT

Defendants ACH FREIGHT FORWARDING INC. ("ACH") and JIMIN ZHOU a.k.a. JIMMY ZHOU ("Zhou"), by and through their attorneys, LAW OFFICES OF BING LI, LLC, respectfully submit this Memorandum of Law in support of their motion for an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing each of the six causes of action as against Zhou personally, dismissing the Fourth Cause of Action for Conversion and Fifth Cause of Action for Fraudulent Inducement as against corporate defendant ACH, and granting them such other and further relief as the Court deems just and proper. For purposes of the instant motion, the Declaration of Bing Li made the 5th day of November, 2007 ("Li Decl.") together with the exhibits annexed thereto, is incorporated herein by reference.

## STATEMENT OF FACTS

The following facts are based on the allegations made in Plaintiff's Complaint ("Compl.") (Li Decl., Ex. A). Plaintiff is a corporation organized under the law of China located in Beijing City, China. Compl. ¶ 4. Defendant ACH is a New York corporation located in Flushing, New York. Compl. ¶ 5. Defendant Zhou is an individual residing in the State of New York and "working as a manager for ACH[.]" Compl., ¶ 6. The other defendants named in the Complaint are Xiao Ji He d/b/a Pacific Jin An Trading, Inc. ("Pacific"), a New York corporation located in Jamaica, New York and Xin Miao, Inc. ("Xin Miao"), a New York corporation located in Jamaica, New York. Compl. ¶¶ 7-8. Defendant ACH, during all relevant times, was and still is a non-vessel-operating common carrier ("NOVCC") as licensed by the Federal Maritime Commission. Li Decl., Ex. B. Plaintiff provides "ocean freight service" to the "Defendants" (Comp. ¶ 11, ¶ 27). While Plaintiff does not specifically identify its relationship with the Moving Defendants on the one hand and the non-moving defendants on

the other, it appears that plaintiff and defendant ACH, as a NVOCC, were shipping goods for the non-moving defendants.

According to the Complaint, "[i]n or about April, 2006, Defendant ACH entered into a series of freight service agreements with [Plaintiff] in which [Plaintiff] agreed to provide Defendants with ocean freight service including, but not limited to, reserving containers and vessels, land transportation, loading, making bills of lading, and clearing tariff and customs duty." Compl. ¶ 11. The Complaint uses "Defendants" to refer to all the defendants collectively (Compl., 9); however, there is no question that Plaintiff entered into the freight service agreements with defendant ACH to ship goods for the non-moving defendants. In return for plaintiff's freight forwarding service, "Defendants shall make payments upon receipt of the merchandise." Compl. ¶ 11.

Plaintiff alleges that "[f]rom April 15, 2006 to September, 2006, Plaintiff made seven consecutive shipments including nineteen containers to Defendants from Xingang, China to New York, the U.S.A. at the price of $76,318.78." Compl. ¶ 12. These shipments were "accepted and sold" by defendants ACH and Zhou "[o]n or about July 25, 2006." Compl. ¶ 13. Because ACH and Zhou did not make payments to Plaintiff, Plaintiff withheld the last two shipments in transit and disposed of the merchandise "to mitigate the loss, in accordance with New York Uniform Commercial Code § 7-308." Compl. ¶ 14. It is not clear as to when Plaintiff disposed of the merchandise, but it appears that it occurred between July 26 and September of 2006. Compl., ¶ 11, ¶ 13. Plaintiff then asserts that it incurred additional damages of $23,258.16 in disposing of the merchandise. Compl. ¶ 15. Based on these facts, plaintiff claims that "Defendants" breached the freight service agreements (First Cause of Action, breach of contract) and seeks monetary damages of $99,576.94. Compl. ¶ 17.

In support of its Fourth Cause of Action for conversion as against ACH and Zhou, plaintiff asserts that "[b]y providing ocean freight services and paying all expenses incurred, Plaintiff is a person in the position of a carrier and a person in the position of a seller."  Compl. ¶ 27.  As such, plaintiff asserts that it "has acquired security interest on [*sic.*] and has right to possession of" the merchandise that was shipped by Plaintiff in accordance with section 7-307 and section 2-707 of the New York Uniform Commercial Code.  Compl. ¶ 28.  Plaintiff further alleges that Defendants ACH and Zhou on or about July 25, 2006 "wrongfully obtained the shipments, without surrendering the bills of lading therefor, and without making any payments attached thereto" and "wrongfully converted the seven containers to their own use in disregard of Plaintiff's right to possession of the said shipments."  Compl. ¶¶ 28-29.  Plaintiff also alleges that Defendants ACH and Zhou "have resold the converted merchandises and retained all proceeds thereof" (Compl. ¶ 30) and that the non-moving defendants Pacific and Xin Miao "were acting in concert in the alleged conducts of conversion" (Compl. ¶ 31).

In support of its Fifth Cause of Action for Fraudulent Inducement against the Moving Defendants, Plaintiff alleges that on or about July 13, 2006 and July 28, 2006, Zhou informed Plaintiff that "they were wiring partial payments to Plaintiff in exchange of bills of lading and continuing services."  Compl. ¶ 35.  Furthermore, "in support of his representation, Defendant Zhou produced photocopies of several banking instruments including a signed check and a completed Wiring Application."  Id.  Plaintiff further states that it later found out that "Defendants" did not make payments and "Defendants had no intention to make payments and fraudulently induced Plaintiff to provide the said freight service."  Compl. ¶¶ 36-37.  Plaintiff also alleges that the non-moving defendants Pacific and Xin Miao "were acting in concert in the alleged conducts of fraudulent inducement."  Compl. ¶ 38.

Defendants ACH and Zhou presently move to dismiss each of the causes of action as against Zhou personally and the Fourth and Fifth Causes of Action for conversion and fraudulent inducement respectively as against Defendant ACH and for such other and further relief as the Court deems just and proper.  For the reasons stated herein, the Court is requested to grant the motion in its entirety.

## ARGUMENT

## POINT I

### STANDARD GOVERNING RULE 12(b)(6) MOTION TO DISMISS

In <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964 (2007), the Supreme Court reconsidered the standard for deciding a defendant's motion to dismiss.  In <u>Twombly</u>, the Court disavowed the well-known statement in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  The <u>Twombly</u> Court stated:

> ... To be fair to the *Conley* Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief.  But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement.  The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.  [citations omitted]  *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's dismissal.

<u>Id.</u> at 1969.

The Twombly Court applied "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). Judge Lynch of this Court explained this standard and its applicability in Johnson & Johnson v. Guidant Corp. No. 06 Civ. 7685 (GEL), 2007 WL 2456625, at *4-5 (S.D.N.Y. Aug. 29, 2007) as follows:

> Under this standard, a complaint may be dismissed where it fails to plead "enough facts to state a claim to relief that is plausible on its face.'" Twombly 127 S.Ct. at 1974. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 1965 (internal quotation marks omitted). In order to state a claim, the factual allegations "must be enough to raise a right to relief above the speculative level." Id. Where a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id. at 1974. It remains true, however, that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (internal alteration, citations and quotation marks omitted).

Judge Lynch further observed that while "*Twombly* did not make clear whether its reformation of traditional pleading standards applies beyond the antitrust context, except insofar as it rejects the famous language from *Conley*[,] [t]he Second Circuit, however, has 'declined to read *Twombly'* s flexible "plausibility standard" as relating only to antitrust cases .'" Citing ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 n. 2 (2d Cir. 2007), citing Iqbal, 490 F.3d at 157-58 (2d Cir. 2007)

Nevertheless, courts must continue to accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. ASTI, 493 F.3d at 98.

## POINT II

## PLAINTIFF'S FOURTH CAUSE OF ACTION FOR CONVERSION MUST BE DISMISSED.

Plaintiff's cause of action for conversion as against Zhou and ACH must be dismissed on the grounds (i) Plaintiff did not have ownership, possession or control over the merchandise before the alleged conversion and the Moving Defendants had lawful dominion and control over the merchandise and (ii) the conversion cause of action is duplicative of plaintiff's breach of contract claim.

A.   **Plaintiff did not have any Legal Ownership, Possession or Control over the Merchandise and the Moving Defendants Had Lawful Dominion and Control over the Merchandise.**

In New York, conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." AD Rendon Communications, Inc. v. Lumina Americas, Inc., No. 04 Civ. 8832 (KMK), 2007 WL 2962591, *8-9 (Oct. 10, 2007, S.D.N.Y.) (citations omitted).  "[T]o establish a claim for conversion, a plaintiff must show that: '(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'"  Id., citing Moses v. Martin, 360 F.Supp.2d 533, 541 (S.D.N.Y. 2004) (internal citations omitted).

Here, plaintiff's complaint fails to plead "enough facts to state a claim to relief that is plausible on its face.'"  Twombly 127 S.Ct. at 1974.  According to plaintiff, it "acquired security interest [in] and has possession of the said shipments" by operation of section 7-307 and section 2-707 of the New York Uniform Commercial Code ("NYUCC").  Compl. ¶¶ 27-28.  However,

NYUCC § 7-307 simply does not give plaintiff any legal ownership, possession or control over the merchandise, except that the statute creates a lien of carrier with respect to the goods covered by a bill of lading.[1]  In addition, NYUCC § 7-307 (3) specifically provides that "[a] carrier loses his lien on any goods which he voluntarily delivers or which he unjustifiably refuses to deliver."  Plaintiff's allegations make it clear that "[f]rom April 15, 2006 to September, 2006, Plaintiff made seven consecutive shipments including nineteen containers to Defendants" and "[o]n or about July 25, 2006, Defendant ACH and Defendant Zhou accepted and sold the merchandises[.]"  Compl. ¶¶ 12-13.  Plaintiff withheld the last two shipments which plaintiff itself ultimately disposed of without delivering them to the Defendants.[2]  Compl. ¶ 14.  However, plaintiff does not allege that it was these last two shipments that were converted by the Moving Defendants.

---

[1] The text of section 7-307 of the New York Uniform Commercial Code reads as follows:

Section 7--307. Lien of Carrier.

(1)  A carrier has a lien on the goods covered by a bill of lading for charges subsequent to the date of its receipt of the goods for storage or  transportation (including  demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law. But against a purchaser for value of a negotiable bill of lading a carrier's lien is limited to charges stated in the bill or the applicable tariffs, or if no charges are stated then to a reasonable charge.

(2)  A lien for charges and expenses under subsection (1) on goods which the carrier was required by law to receive for  transportation is effective against the consignor or  any person entitled to the goods unless the carrier had notice that the consignor lacked authority to subject the  goods to such charges and expenses.  Any other lien under subsection (1) is effective against the consignor and any  person  who permitted the bailor to have control or possession of the goods unless the carrier had notice that the bailor lacked such authority.

(3) A carrier loses his lien on any goods which he  voluntarily delivers or which he unjustifiably refuses to deliver.

[2] For this reason, plaintiff's allegation made in Paragraph 30 that the Moving Defendants converted "seven containers" is inaccurate and incorrect or confusing.  In Paragraph 12, plaintiff referred to "seven consecutive shipments including nineteen containers" and in Paragraph 14, plaintiff states that it "withheld the last two shipments in transit" without specifying as to the number of containers included in the last two shipments.

Nor is Plaintiff a "person in the position of a seller" under NYUCC § 2-707[3] so as to acquire the rights enumerated in NYUCC § 2-707(2).  Both the statutory language and Official Comment of subsection (1) indicates that the term includes the financing agency, "which has acquired documents by honoring a letter of credit for the buyer or by discounting a draft for the seller[.]"  Official Comment to Section 2-707.  Here, plaintiff is not such a "financial agency."

Professors Linda J. Rusch and Frederick H. Miller write in Hawkland's Uniform Commercial Code Series, UCC Article 2 (February 2007):

> In commenting on the meaning of this section [§ 2-707], Professor Williston, its drafter, stated:
>
> A factor or other agent who has advanced money in the purchase of goods, or has made himself primarily liable for the price for his principal, is thus entitled to the same rights against the goods as a seller.  So a principal under obligation to consign goods to a factor may exercise the rights of an unpaid seller on the insolvency of the factor though the factor has made advances.  So a surety who has paid the price because of the buyer's default; but a surety has not this right unless he had paid the price.

Therefore, under Professor Williston's commentary, plaintiff, as a freight forwarder or carrier, cannot qualify for such a "person in the position of a seller."

Even assuming, arguendo, that it is such a "person in the position of a seller" within the meaning of NYUCC § 2-707, plaintiff's release and delivery of the first five of the total seven shipments had terminated its rights a buyer would have under subsection (2) of the section.

---

[3] The full text of section 2-707 of the New York Uniform Commercial Code reads as follows:
Section 2--707. "Person in the Position of a Seller".
(1)  A "person in the position of a seller" includes as against a principal an agent who has paid or become responsible for the price of goods on behalf of his  principal or anyone who otherwise holds a security interest or other right in goods similar to that of a seller.
(2) A person in the position of a seller may as provided  in  this Article  withhold  or stop delivery (Section 2--705) and resell (Section 2--706) and recover incidental damages (Section 2--710).

More specifically, pursuant to subsection 2-705(2)(d) [4], a carrier's negotiation of a negotiable document of title will cut-off the seller's right to stop delivery.  The "document of title" is defined in section 1-201[5] to apply to any document of title, including bills of ladings and warehouse receipts.

Therefore, plaintiff did not have any legal ownership, possession or control over the merchandise identified as the first five of the total shipments that were delivery to and accepted by the Moving Defendants.  As such, the Moving Defendants had lawful dominion and control over the identified goods.

> **B.    The Conversion Claim Is Nonetheless
>         Duplicative of the Breach of Contract
>         Cause of Action.**

Even if Plaintiff meets all of the elements of a conversion claim, the claim will still be dismissed if it is duplicative of a breach of contract claim.  AD Rendon, 2007 WL 2962591, at

---

[4] The full text of section 2-705 of the New York Uniform Commercial Code reads as follows:
Section 2--705. Seller's Stoppage of Delivery in Transit or Otherwise.
(1)  The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers  the buyer to be insolvent (Section  2--702) and may stop delivery of carload, truckload, planeload or larger shipments of express or freight when the buyer repudiates  or fails to make a payment due before delivery or if for any other reason the seller has a right to withhold or reclaim the goods.
(2) As against such buyer the seller may stop delivery until
(a) receipt of the goods by the buyer; or
(b) acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or
(c) such acknowledgment to the buyer by a carrier by  reshipment or as warehouseman; or
(d) negotiation to the buyer of any negotiable document of title covering the goods.
(3)  (a) To stop delivery the seller must so notify as to  enable  the bailee by reasonable diligence to prevent delivery of the goods.
(b) After such notification the bailee must hold and deliver  the goods according to the directions of the seller but the seller is liable to the bailee for any ensuing charges or damages.
(c) If a negotiable document of title has been issued for goods the bailee is not obliged to obey a notification  to  stop until surrender of the document.
(d) A carrier who has issued a non-negotiable bill of lading is not obliged to obey a notification to stop  received from a person other than the consignor.

[5] NYUCC § 1-201(15).

*9; see also Hochman v. Major Auto Companies, Inc., 14 A.D.3d 653 (2d Dept. 2004)

(reversing the lower court's order and dismissing the cause of action for conversion, holding that

a cause of action alleging conversion cannot be predicated on a mere breach of contract); Wolf

v. National Council of Young Israel, 264 A.D.2d 416 (2d Dept. 1999) (holding that the lower

court properly dismissed defendant's conversion counterclaim because the claim did not stem

from a wrong which was independent of the alleged breach of the mortgage agreements); Priolo

Communs. v. MCI Telecomms. Corp., 248 A.D.2d 453, 454 (1st Dept. 1998) ("A claim to

recover damages for conversion cannot be predicated on a mere breach of contract.")

Judge Karas of this Court in AD Rendon writes:

> In determining whether a conversion claim is duplicative of a breach of
> contract claim, courts look both to the material facts upon which each
> claim is based and to the alleged injuries for which damages are sought.
> Thus, "a tort cause of action that is based upon the same facts underlying
> a contract claim will be dismissed as a mere duplication of the contract
> cause of action .... " Reade v. SL Green Operating P'ship, 817 N.Y.S.2d
> 230, 231 (App.Div. 2006); see also Command Cinema Corp. v. VCA
> Labs, Inc., 464 F.Supp.2d 191, 199 (S.D.N.Y. 2006) ("A conversion
> claim may only succeed if the party alleges a wrong that is distinct from
> any contractual obligations."); Alliance Group Servs., Inc. v. Grassi, Co.,
> 406 F.Supp.2d 157, 170 (D.Conn. 2005) ("Where plaintiffs have merely
> repeated ... their breach of contract claims and called them conversions,
> the conversion claims must fail." (internal quotation marks omitted)).
> And, similarly, a conversion claim will "be deemed redundant when
> damages are merely being sought for breach of contract." Rolls-Royce
> Motor Cars, Inc. v. Schudroff, 929 F.Supp. 117, 124 (S.D.N.Y. 1996)
> 929 F.Supp. 117, 124 (S.D.N.Y. 1996) (internal quotation marks omitted);
> see also Alliance Group Servs., 406 F.Supp.2d at 170 ("An action for
> conversion cannot be validly maintained where damages are merely
> being sought for breach of contract." (internal quotation marks omitted)).
> Here, Ad Rendon's conversion claim suffers from both of these
> deficiencies.

Here, as the dismissed conversion claim in AD Rendon, plaintiff's claim for conversion

is essentially based on the same allegations for their breach of contract claim that the Moving

Defendants ACH and Zhou failed to pay plaintiff for its "ocean freight service."  Compl. ¶ 29

(alleging that ACH and Zhou wrongfully obtained the shipments without making any payments), ¶ 30 (alleging that ACH and Zhou resold the merchandise but retained the sales proceeds), ¶ 15 (alleging that the Moving Defendants breached the contract by failing to pay plaintiff $99,576.94). The only difference is that in the conversion claim plaintiff asserts that the Moving Defendants "wrongfully obtained" the first five of the total seven shipments (Compl. ¶¶ 29-30), while in the breach of contract claim plaintiff stated that the Moving Defendants "accepted and resold the merchandises" (Compl. ¶ 13). Also as in <u>AD Rendon</u>, both the conversion and breach of contract claims seek redress for virtually the same damages, i.e. $99,576.94. "Thus, if Plaintiff were to recover under both claims, it would in effect be paid twice." <u>Id.</u>, at *5. <u>See also</u> <u>Alliance Group Servs.</u>, 406 F.Supp.2d at 170 ("An action for conversion cannot be validly maintained where damages are merely being sought for breach of contract." Accordingly, applying the <u>Twombly</u> standard, plaintiff's Conversion claim must be dismissed as it fails to plead "enough facts to state a claim to relief that is plausible on its face."

**POINT III**

**PLAINTIFF'S FIFTH CAUSE OF ACTION FOR FRAUDULENT INDUCEMENT MUST BE DISMISSED.**

Under New York law, a fraud claim will not lie if it arises "out of the same facts as plaintiff's breach of contract claim." <u>Telecom International America, Ltd. v. AT&T Corp.</u>, 280 F.3d 175, 196 (2d Cir. 2001) (citing New York law). Even with the addition of the allegation that the "defendant never intended to perform" the contract, "the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." <u>Id.</u> In order to maintain a fraud claim arising from a breach of contract, a plaintiff must plead: "[1] a legal duty separate from the duty to perform under the contract, [2] a fraudulent misrepresentation collateral or extraneous to the

contract, or [3] special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone v. Recovery Credit Services, 98 F.3d 13, 20 (2d Cir. 1996) (citing New York law).

The Second Circuit has held that, as a general rule, the allegation that a party entered into a contract intending to breach that contract is insufficient to support a claim for fraud under New York law. See Manning v. Utils. Mut. Ins. Co., 254 F.3d 387, 401 (2d Cir. 2001) (concluding that a representation that "is merely a statement of intent to perform under the contract cannot constitute fraud"); Bridgestone/Firestone (dismissing a fraud claim where the alleged misrepresentations "amount[ed] to little more than intentionally-false statements ... indicating [defendant's] intent to perform under the contract"). Thus, courts in this district have consistently dismissed fraud claims predicated on allegations that defendants did not intend to meet their contractual obligations. See Sudul v. Computer Outsourcing Services, 868 F.Supp. 59, 62 (S.D.N.Y. 1994) ("... where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract"); Irwin Sales, Inc. v. Prodigy Services Corporation, No. 99 Civ. 10878 (DC), 2000 WL 978014 at *1 (July 17, 2000 S.D.N.Y.) (finding that plaintiff's allegations made clear that defendants defrauded plaintiff because defendant did not intend to meet is obligations under the agreement); Town of Haverstraw v. Columbia Elec. Corp., 237 F.Supp.2d 452, 455 (S.D.N.Y. 2002); Dyncorp. v. GTE Corp., 215 F.Supp.2d 308, 324 (S.D.N.Y. 2002); Cougar Audio, Inc. v. Reich, No. 99 Civ. 4498 (LBS), 2000 WL 420546, at *6 (S.D.N.Y. April 18, 2000); and Papas' June Music, Inc. v. McLean, 921 F.Supp. 1154, 1160-61 (S.D.N.Y. 1996).

Here, there is no question that plaintiff's fraud claim is based on plaintiff's breach of contract claim. Plaintiff's allegations relating to the breach of contract claim make clear that by July 25, 2006 plaintiff had already released five of the seven shipments but withheld the last two shipments, arguably between July 26, 2006 and September 2006. Compl., ¶¶ 12-14. However, the Moving Defendants did not make payments to plaintiff. Compl. ¶ 13. In support of its fraudulent inducement claim, plaintiff states that "[o]n or about July 13, 2006 and July 28, 2006 Defendant Zhou informed plaintiff that they were wiring partial payments to Plaintiff in exchange of bills of lading and continuing services" (Compl. ¶ 35); that "Plaintiff later finds [sic.] out the Defendants did not make payments" (Compl. ¶ 36); and that "Defendants had no intention to make payments and fraudulently induced Plaintiff to provide the said freight service" (Compl. ¶ 37).

Assuming these allegations are true for the purposes of this motion, the fraudulent inducement claim stands out as duplicative of the breach of contract claim with the addition only for the allegation that the Moving Defendants "had not intention to make payments" in accordance with "the precise promises spelled out in the contract between the parties." Sudul. Furthermore, the Complaint fails to state any facts that would demonstrate any "special damages that are caused by the [fraudulent inducement] and unrecoverable as contract damages." Bridgestone/Firestone, 98 F.3d at 20. Nor is there any allegation in the Complaint stating the other two exceptions set forth in Bridgestone/Firestone in support of its fraud claim. The allegations fail to "state a claim to relief that is plausible on its face.'" Twombly. Accordingly, plaintiff's fraud claim must be dismissed.

## POINT IV

### THE COMPLAINT MUST BE DISMISSED AS AGAINST ZHOU PERSONALLY.

Plaintiffs' Complaint must be dismissed for failure to state a cause of action against Zhou personally as a corporate officer of Defendant ACH.

The New York courts have held that "[t]he general rule, as we have stated, is that an 'officer or director is liable when he acts for his personal, rather than the corporate interests.'" Joan Hansen & Company, Inc. v. Everlast World's Boxing Headquarters Corp., 296 A.D.2d 103, 110 (1st Dept. 2002) (internal citations omitted). See also Gottehrer v. Viet-Hoa Co., 170 A.D.2d 648, 649 (2d Dept. 1991) (holding that "[a] corporate officer charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he acted in good faith as an officer and did not commit independent torts or predatory acts against another [citations omitted]").

Therefore, "... a pleading must allege that the acts complained of, whether or not beyond the scope of the defendant's corporate authority, were performed with malice and were calculated to impair the plaintiff's business for the personal profit of the defendant." Id. (citations omitted). The Joan Hansen court further stated:

> The legal distinction drawn between a corporation and those who administer its affairs is a matter of sound public policy. "The law permits the incorporation of a business for the very purpose of escaping personal liability" (Bartle v. Home Owners Coop., 309 N.Y. 103, 106, 127 N.E.2d 832). It is settled that "a corporation exists independently of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners" (Morris v. Department of Taxation, 82 N.Y.2d 135, 140, 603 N.Y.S.2d 807, 623 N.E.2d 1157).

Id., at 109.  See also Mills v. Polar Molecular Corporation, 12 F.3d 1170, 1177 (2d Cir. 1993)

("A director is not personally liable for his corporation's contractual breaches unless he

assumed personal liability, acted in bad faith or committed a tort in connection with the

performance of the contract."); Puma Indus. Consulting, Inc. v. Daal Assocs., Inc., 808 F.2d

982, 986 (2d Cir.1987) (stating that defendants "cannot be held individually liable for a breach

of contract [if] they acted in their capacities as officers"); Oscar Prods., Inc. v. Zacharius, 893

F.Supp. 250, 256 (S.D.N.Y.1996) (dismissing contract claim against corporate officer where

there was no evidence that he was acting in his personal, rather than official, capacity).

      Here, applying the established legal principles governing corporate officer's personal

liability, the Complaint must be dismissed as against Defendant Zhou personally.  Plaintiff

states that Zhou is "working as a manager for ACH" (Compl. ¶ 6), and nowhere in the

Complaint does plaintiff allege that Zhou acted in other than a corporate capacity or that Zhou

performed any acts "with malice [that] were calculated to impair the plaintiff's business for the

personal profit of the defendant."  Joan Hansen, 296 A.D.2d at 109-110.  Instead, plaintiff's

allegations, upon any reasonable view of the facts stated, suggest that Zhou entered into the

"ocean freight service" agreement on behalf of ACH and Defendant ACH subsequently

breached it by failing to pay plaintiff for the freight and expenses.  Compl. ¶ 11-17.

Accordingly, plaintiff's Complaint must be dismissed in its entirety as against Defendant Zhou

personally.

## <u>CONCLUSION</u>

For the reasons stated in the foregoing, the Moving defendants ACH Freight Forwarding Inc. and Jimin Zhou a/k/a Jimmy Zhou request that the Court grant their motion in its entirety and that the Court award them such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: New York, New York
      November 5, 2007

                                       LAW OFFICES OF BING LI, LLC
Attorneys for Defendants
ACH FREIGHT FORWARDING INC.
and JIMIN ZHOU a/k/a JIMMY ZHOU

By: /s/_____
    Bing Li (BL 5550)
    1350 Broadway, Suite 1001
    New York, NY 10018-0947
    (212) 967-7690