UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GINTER LOGISTICS SERVICE CO, LTD,

                              Plaintiff,

        -against-

ACH FREIGHT FORWARDING, INC., JIMIN ZHOU
a/k/a JIMMY ZHOU, XIAO JI HE d/b/a PACIFIC JIN
AN TRADING, INC. and XIN MIAO, INC.,

                             Defendants.
-------------------------------------------------------------------X

Index No. 07 CIV 8677


MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


Dai & Associates, P.C.
Attorneys for Plaintiff
136-18 39th Ave, Suite 1102
Flushing, NY 11354
(718) 888-8880

1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………………………..3, 4

INTRODUCTION…………………………………………………………………………………...5

STATEMENT OF FACTS…………………………………………………………………………….5

ARGUMENT………………………………………………………………………………………..6

POINT I    MOTION TO DISMISS SHALL BE DENIED BECAUSE MOVING PARTIES ERR IN STANDARD OF REVIEW......................................................................6

POINT II   CAUSE OF ACTION FOR CONVERSION SHALL SURVIVE BECAUSE PLAINTIFF HAD RIGHT OF POSSESSION AND THE CONVERSION CLAIM IS NOT DUPLICATIVE OF BREACH OF CONTRACT CLAIMS…………..…9

A.  Plaintiff has control and immediate right to possession on the June 26th, 2006 shipment, in total of seven containers……………………………………………………………………...9

B.  Conversion claim is not duplicated with breach of contract claim…………………………..12

POINT III  PLAINTIFF'S FIFTH CAUSE OF ACTION FOR FRAUDULENT INDUCEMENT SHOULD NOT BE DISMISSED BECAUSE PLAINTIFF CAN DEMONSTRATE A FRAUDULENT MISREPRESENTATION COLLATERAL OR EXTRANEOUS TO THE CONTRACT AND DEFENDANTS' MISREPRESENTATION CAUSED SPECIAL DAMAGES THAT ARE UNRECOVERABLE AS CONTRACT DAMAGES……………………………………………………………………………12

1. Defendant ACH and Zhou's post-contract fraudulent misrepresentation is collateral or extraneous to the service contract because ACH and Zhou virtually defrauded Ginter into a revised agreement and misled Ginter to believe defendants were performing their payment duty under this revised agreement……...…………………………………………………….13

2. Defendant ACH and Zhou's fraudulent misrepresentation causes special damages unrecoverable as contract damages because plaintiff might have recovered its loss by exercising its lien upon the merchandises if it were not induced to lose control of the merchandises and plaintiff is entitled to punitive damages which are usually unrecoverable as contract damages……………………………………………………………………………..15

POINT IV   PLAINTIFF HAS STATED A CLAIM THAT ZHOU IS PERSONALLY LIABLE TO PLAINTIFF BECAUSE HIS INTENTIONAL MISREPRESENTATION, BAD FAITH AND A KNOWING VIOLATION OF LAW DEPRIVE HIM OF THE PROTECTION FOR CORPORATE OFFICERS…………………………….……15

POINT V    ALTERNATIVELY, IF THE COURT FINDS PLAINTIFF FAILS TO STATE A CLAIM, PLAINTIFF SHOULD BE GIVEN LEAVE TO REPLEAD……………17

CONCLUSION ……………………………………………………………………………………...18

TABLE OF AUTHORITIES

STATUTES AND RULES:

Federal Rule of Civil Procedure 8 (a) (2007)…………………………………………………….7

Federal Rules of Civil Procedure 15 (2007)……………………………………………………18

N.Y. U.C.C. Law § 2-707 (Consoli. 2007)……………………………………………………9

N.Y. U.C.C. Law § 2-705 (1) (Consoli. 2007)……………………………………………….10

N.Y. U.C.C. Law § 2-705 (3) (d) (Consoli. 2007) …………………………………...……...10

N.Y. U.C.C. Law § 2-307 (Consoli. 2007)…………………………………………………...11

N.Y. U.C.C. Law § 2-308 (Consoli. 2007)…………………………………………………..12

N.Y. Business Corporation Law § 402(b) (McKinney 2007)……………………………………..16

CASES:

Scheuer v. Rhodes, 416 U.S. 232 (1974)……………………………………………………….7

Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir. 1996)………….7

Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993)……………………………...7

Blimpie Int'l, Inc. v. Blimpie of the Keys, 371 F. Supp. 2d 469, 470-71 (S.D.N.Y. 2005)………7

Chosun Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 327 (2d Cir. 2005)…………………7

27 Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004)……………………………………..7

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)…………………………………7

Conley v. Gibson, 355 U.S. 41, 45-46 (1957)……………………………………………………7

Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007)……………………………………………..7

Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ………………………………………………8

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002)………………………………………8

ATSI Communs., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)……………………8

Slue v. New York Univ. Med. Ctr., 409 F. Supp. 2d 349, 364 (S.D. N.Y., 2006) ……………...11

Weizmann Inst. of Sci. v. Neschis, 229 F. Supp. 2d 234, 253  (S.D.N.Y., 2002)……………….11

Goebel v. Clark, 242 A.D. 408 (4th Dept. 1934)……………………………………………13

Apex Oil Co. v. Belcher Co. of New York, Inc., 855 F. 2d 997, 1008 (2d. Cir. 1988)…............13

Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F. 3d 13, 20 (2d Cir. 1996)…….13

Town of Haverstraw v. Columbia Electric Corp. and Haverstraw Bay, LLC, 237 F. Supp. 2d 452 (2002)……………………………………………………………………………………………..13

Graubard Mollen Dannett & Horowitz v. Moskovitz, 86 N.Y. 2d 112, 122, 653 N.E. 2d 1179 (1995)……………………………………………………………………………………………...13

OHM Remediation Servs. Corp. v. Hughes Envtl. Sys. Inc., 952 F. Supp. 120 (N.D.N.Y. 1997)..13

Bildstein v. Atwater, 222 A.D. 2d 545; 635 N.Y.S. 2d 88 (2d. Dept. 1995)………………....…16

Gottecher v. Viet-Hoa Co., 170 A.D. 2d 648 (2d Dept. 1991)……………………………………16

Mills v. Polar Molecular Corporation, 12 F. 3d 1170, 1177 (2d Cir. 1993)………………………16

Kramer v. Twin County Grocers, 151 A.D. 2d 722; 542 N.Y.S. 2d 787 (2d Dept. 1989)………..16

Espinosa v. Rand and DKSR Holding Ltd., 24 A.D. 3d 102, 806 N.Y.S. 2d 186 (1st Dept. 2005)……………………………………………………………………………………………16

Retroplic, Inc., v. 14th Street Development LLC, 17 A.D. 3d 209; 797 N.Y.S. 2d 1 (1st Dept. 2005)……………………………………………………………………………………………16

Rothstein v. Equity Ventures, LLC., 299 A.D. 2d 472; 750 N.Y.S. 2d 625, 627 (2d Dept. 2002)……………………………………………………………………………………………....16

Freeman v. Complex Computer Company, Inc. at etc., 119 F. 3d 1044, 1051 (2d Cir. 1997)……………………………………………………………………………………………...17

INTRODUCTION

Plaintiff Ginter Logistics Service Co, Ltd. ("Ginter") seeks the legal and equity remedy against defendants in this action for its logistics service because defendants accepted and sold the merchandises without making payment to plaintiff. Defendant ACH Freight Forwarding, Inc. ("ACH") seeks to dismiss the Fourth Cause of Action for Conversion and Fifth Cause of Action for Fraudulent Inducement; and its manager, Jimin Zhou a/k/a Jimmy Zhou ("Zhou") seeks to avoid personal liability for the loss he caused to plaintiff. Plaintiff Ginter, by and through its attorneys, Dai & Associates, P.C. submits this memorandum of law in opposition to defendant ACH and Zhou's motion to dismiss.

For the purpose of the instant motion, the Declaration of Yuan Zheng ("Decl. of Y.Z.") with its exhibits, sworn to December 3, 2007, together with the Plaintiff's Complaint thereto ("Compl."), is incorporated herein by reference.

STATEMENT OF FACTS

In or about April, 2006, defendant ACH entered into a series of freight service agreements with Ginter in which Ginter shall provided defendants with logistics services for defendants' importing business. Compl. ¶11. Pursuant to the agreement, from April to September, 2006, Ginter made five consecutive shipments including nineteen containers to defendants from China to New York[1]. Compl. ¶12. The first three shipments have been timely delivered to Zhou and ACH. Zhou and ACH accepted the shipments, but failed to make payments to Ginter. In or about June, 2006, Ginter made another shipment, in total of seven containers, to the designated sea port near New York. The shipment arrived at the port on or about July 19th, 2006. To obtain the legal title of the shipment, Zhou represented to Ginter that they were wiring partial payments to Ginter in exchange for release of the arrived cargo and further services.

---

[1] The original Complaint contains a clerical error, where the number of shipments was mistakenly stated as "**seven** shipments including nineteen containers". Compl. ¶12. Instead, it should be "**five** shipments including nineteen containers".

5

Compl. ¶35.  Meanwhile, to gain Ginter's reliance, Zhou produced photocopies of several bank instruments including a signed check, drawn from the bank account of Xiao Jie He d/b/a Pacific Jin An Trading, Inc, ("Pacific"), and a wire transfer application, completed by Zhou with Great Eastern Bank in New York, to Ginter.  *Id; See also* Exhibit B of Decl. of Y.Z.  In reliance on Zhou's representation, Ginter continued to provide the freight services and paid all expenses and costs incurred. *Id.*  On or about July 25, 2006, ACH and Zhou wrongfully obtained and sold the merchandises, but they did not make any payments to Ginter as promised. Compl. ¶¶29, 30.  In fact, Ginter never received any payments as indicated by the bank instruments presented by Zhou. The authenticities of the aforementioned bank instruments remain unknown. Compl.¶36. Obviously, defendants had no intention to make payments to Ginter and misled Ginter, by presenting the bank instruments, to obtain legal title of the said merchandises.  Compl. ¶37. Ginter does not have sufficient information to identify the relationship between ACH, and Pacific and Xin Miao in its complaint.  It appears that ACH was forwarding goods for the non- moving defendants Pacific and Xin Miao, Inc. ("Xin Miao").  Defendants ACH, Zhou, Pacific and Xin Miao are believed to act in concert in the above-mentioned fraud.  Compl. ¶38.  Due to defendants' non-payment, Ginter withheld the last shipment in transit including two containers to mitigate the loss[2].  Compl. ¶14.   Plaintiff incurred additional damages in disposing the last shipment. Compl. ¶15.

## ARGUMENT

### POINT I

### MOTION TO DISMISS SHALL BE DENIED BECAUSE MOVING PARTIES ERR IN STANDARD OF REVIEW

---

[2] The original Complaint contains a clerical error, where it states "Plaintiff withheld the last two **shipments** in transit". Compl. ¶12. Instead, it should be "Plaintiff withheld the last two **containers** in transit".

Moving defendants, by misconstruing several precedents in the motion, allude that a heightened standard of fact pleading shall be applied in reviewing the above-mentioned Complaint and Motion to Dismiss. We disagree.

Federal Rule of Civil Procedure 8 (a) clearly stipulates a liberal notice pleading requirement that "[a] pleading that states a claim for relief must contain: …; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief ." Fed. R. Civ. P. 8 (a). In Scheuer v. Rhodes, 416 U.S. 232 (1974), the Court held that:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. **The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.** *Id*, at 236. (emphasis added)

In reviewing a motion to dismiss for failure to state a cause of action, the Court shall construe the allegations of the complaint in favor of plaintiff. *Id*. Also, the Court will accept plaintiff's non-conclusory allegations as true and draw all reasonable inferences in plaintiff's favor. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993); Blimpie Int'l, Inc. v. Blimpie of the Keys, 371 F. Supp. 2d 469, 470-71 (S.D.N.Y. 2005). At this stage, the Court is not concerned with weighing the evidence that would be presented at trial. Chosun Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 327 (2d Cir. 2005). Simply put, "Rule 8 pleading is extremely permissive." 27 Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004).

Although recently, in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007), the Supreme Court has relaxed the "no set of facts" standard under Conley v. Gibson, 355 U.S. 41, 45-46 (1957), the reviewing standard for motion to dismiss remains narrowly construed and does not require a universal standard of heightened fact pleading. Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007). In fact, the Court in Iqbal, closely analyzed the text of Twombly and determined that it "i**s not requiring a universal standard of heightened fact pleading,** but is instead requiring a

7

flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Id.* (emphasis added). In fact, shortly after Twombly, Supreme Court held in another decision that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests" Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

      Citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002), the Second Circuit, in Iqbal, further acknowledged that "[t]he Supreme Court's statement in that decision that heightened pleading requirements 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" Iqbal, 490 F.3d at 158. Therefore, Twombly's plausibility standard did not significantly alter notice pleading under Rule 8 (a) or impose heightened pleading requirements for all federal claims. Instead, Iqbal interpreted Twombly to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief. *Id,* at 156.

      Additionally, as the Second Circuit discussed in Iqbal, Twombly's plausibility standard can be best interpreted in the contexts of certain special consideration, such as the complexity of discoveries in antitrust proceeding, which would justify the merits of a heightened reviewing standard. *Id,* at 158. Although such legal grounds may not be limited to antitrust, ATSI Communs., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007), defendant ought to have burden to demonstrate comparable legal grounds or policy considerations that would justify a deviation from the well established notice pleading standard under Rule 8 (a).

      Defendants, in the filed motion, failed to elaborate any special circumstances to differentiate the current case from general commercial disputes. Therefore, the applicable standard of review shall be notice-pleading standard under Rule 8 (a), which has been consistently upheld by this Court.

POINT II

CAUSE OF ACTION FOR CONVERSION SHALL
SURVIVE BECAUSE PLAINTIFF HAD RIGHT OF
POSSESSION AND THE CONVERSION CLAIM IS
NOT DUPLICATIVE OF BREACH OF CONTRACT CLAIMS.

Defendants ACH and Zhou argue that Plaintiff's cause of action for conversion must be dismissed on the grounds (i) Plaintiff did not have ownership, possession or control over the merchandise before the alleged conversion and the moving defendants had lawful dominion and control over the merchandise and (ii) the conversion cause of action is duplicative of plaintiff's breach of contract claim. This argument does not have merit.

    A.    Plaintiff has control and immediate right to possession on the June 26th, 2006 shipment, in total of seven containers.

Moving Defendants argue that Ginter does not have right of possession because Ginter is not a "person in the position of a seller" under UCC § 2-707. We disagree. UCC § 2-707 (1) provides that "[a] 'person in the position of a seller' includes as against a principal an agent who has paid or become responsible for the price of goods on behalf of his principal or **anyone who otherwise holds a security interest or other right in goods similar to that of a seller.**" N.Y. U.C.C. Law § 2-707 (Consoli. 2007) (emphasis added). However, neither this statutory language nor the commentary cited by defendants exclusively defines "person in the position of a seller" as a financial agency. Defendants then quoted paragraphs from a treaty authored by Professor Linda J. Rush and Frederick H. Miller, arguing that, plaintiff, as a freight forwarder or carrier, cannot qualify for such a "person in the position of a seller". However, nowhere in this secondary authority defines "person in the position of a seller" and a careful reading of this secondary authority does not lead to a conclusion that "person in the position of a seller" under § 2-707 refers exclusively to financial agency.

9

In fact, Ginter became a "person in the position of a seller" under § 2-707 by obligating itself to pay near $30,000.00 shipping charge and transaction fees on the seven containers, which is a significant part of the price of goods.

Finally, defendant's argument against seller's right to stoppage of delivery is also unsupported by facts or laws. Defendants argue that plaintiff's release and delivery of the first five [three] shipments had terminated its rights a buyer [Seller] would have under subsection (2) of § 2-707. Once again, Ginter does not dispute that it has shipped, prior to June 26th, 2006, three shipments, in total of ten containers, to ACH and authorized release of these shipments to ACH. However, as to the June 26th shipment, in total of seven containers, Plaintiff has never negotiated any document of title, including bills of lading, to the defendants, nor any authorization to release the goods. Compl. ¶ 30.

In fact, because the June 26th shipment was made under a non-negotiable bill of lading, Plaintiff retained control over the cargo before authorizing its release and had immediate right to stop the delivery under Section 2-705 (1) and 3 (d) of the New York Uniform Commercial Code. Specifically, § 2-705 (1) provides "[t]he seller may stop delivery of goods in the possession of a carrier or other bailee…when the buyer repudiates or **fails to make a payment due before delivery or if for any other reason the seller has a right to withhold or reclaim the goods**". N.Y. U.C.C. Law § 2-705 (1) (Consoli. 2007) (emphasis added). Additionally, § 2-705 (3) (d) provides that a consignor has right to stop a carrier from delivering goods, if a non-negotiable bill of lading is issued. N.Y. U.C.C. Law § 2-705 (3) (d) (Consoli. 2007).

Furthermore, in New York, cause of action for conversion is construed as to protect broadly defined reversionary interest and possessory interest, including immediate right to possession arising out of carrier's lien.

Defendants argue that carrier's lien does not give rise to "ownership, possession or control" and therefore cause of action for conversion cannot be established. We disagree.

10

Under New York law, a claim of conversion exists when the plaintiff shows "any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." Slue v. New York Univ. Med. Ctr., 409 F. Supp. 2d 349, 364 (S.D. N.Y., 2006).

In quoting Section 243 of the Restatement (Second) of Torts, this Court has found that "one who is subject to liability for conversion to a person in possession of a chattel, **or to one entitled to its immediate possession, is also subject to liability to a person entitled to the future possession of the chattel for harm caused to such person's interest in it.**" Weizmann Inst. of Sci. v. Neschis, 229 F. Supp. 2d 234, 253 (S.D.N.Y., 2002) (internal quotation marks omitted) (emphasis added). Additionally, in Goebel v. Clark, 242 A.D. 408 (4th Dept. 1934), the Appellate Division of New York held that injury to plaintiff's reversionary interest in personal property was "sufficient … to establish a cause of action, though not strictly in conversion, against the defendant." *Id,* at 411. Quoting the Comment to New York Pattern Jury Instruction 3:10, entitled "Intentional Torts-Interference with Person or Property-Conversion-Wrongful Taking," this Court has also found, in pertinent part:

> Conversion is concerned with possession, not title, and the plaintiff need only have a possessory right to the chattel that is superior to that of the defendant. Either actual possession or the right to immediate possession is sufficient, and a person entitled to future possession may also recover for the injury to her or her reversionary interest though not strictly in conversion. Weizmann Inst. of Sci. v. Neschis, 229 F. Supp. 2d at 253.

In light of these legal authorities, cause of action for conversion is broadly construed in New York, as to protect reversionary interest and immediate right to possession.

Carrier's lien, defined under UCC § 2-307, certainly encompasses such immediate right to possession. New York Annotations to UCC § 2-307 state that "[T]he first sentence of this subsection gives a carrier, issuing a bill of lading, **a specific possessory statutory lien for the enumerated charges and expenses**" N.Y. U.C.C. Law § 2-307 (Consoli. 2007) (emphasis added)

11

Additionally, other sections of the New York Uniform Commercial Code also provide legal grounds in support of Carrier's possessory interest incidental to Carrier's lien, for costs incurred. UCC § 2-308 provides that "[a] carrier's lien may be enforced by public or private sale of the goods..." N.Y. U.C.C. Law § 2-308 (1) (Consoli. 2007). This enforcement mechanism logically entails possessory rights, because the stipulated disposition methods, perceivably, can only be exercised under carrier's possession or control.

In conclusion, plaintiff's right to stoppage of delivery, under § 2-707, and lien rights upon § 2-307 shall be protected against defendants' conversion.

B. Conversion claim is not duplicated with breach of contract claim.

Defendants argue that the conversion claim is duplicative of the breach of contract cause of action because both the conversion and breach of contract claims seek redress for virtually the same damages. In fact, Ginter's cause of action for conversion arises from a separated set of facts and incidents. On one hand, Ginter's breach of contract claim is predicated on the facts that defendants failed to make payment upon the arrival of the shipments as agreed. On the other hand, the conversion claim is based on the allegation that defendants wrongfully obtained and sold the subsequent merchandises that should have been controlled by Ginter without authorization and legal right of possession. Compl ¶ 30.

POINT III

PLAINTIFF'S CLAIM FOR FRAUDULENT INDUCEMENT SHOULD NOT BE DISMISSED BECAUSE PLAINTIFF CAN DEMONSTRATE A FRAUDULENT MISREPRESENTATION COLLATERAL OR EXTRANEOUS TO THE CONTRACT AND DEFENDANTS' MISREPRESENTATION CAUSED SPECIAL DAMAGES THAT ARE UNRECOVERABLE AS CONTRACT DAMAGES.

Under New York law, a plaintiff alleging fraud must prove (1) that the defendant made a material false misrepresentation, (2) that the representation was made for the purpose of inducing

12

plaintiff to rely upon it, (3) that plaintiff reasonably did so rely, (4) that plaintiff suffered damages as a result of such reliance. Apex Oil Co. v. Belcher Co. of New York, Inc., 855 F. 2d 997, 1008 (2d. Cir. 1988). A fraud claim in the context of a failure to perform an agreement may be brought, if (1) there exists a legal duty separate from the duty to perform under the contract; or (2) there is a fraudulent misrepresentation collateral or extraneous to the contract; or (3) the misrepresentation causes special damages that are unrecoverable as contract damages, Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F. 3d 13, 20 (2d Cir. 1996).

      1.      Defendant ACH and Zhou's post-contract fraudulent misrepresentation is collateral or extraneous to the service contract because ACH and Zhou virtually defrauded Ginter into a revised agreement and misled Ginter to believe defendants were performing their payment duty under this revised agreement.

"[A] false statement of intention is sufficient to support an action for fraud, even if that false statement relates to a contractual agreement." Town of Haverstraw v. Columbia Electric Corp. and Haverstraw Bay, LLC, 237 F. Supp. 2d 452 (2002); *See also* Graubard Mollen Dannett & Horowitz v. Moskovitz, 86 N.Y. 2d 112, 122, 653 N.E. 2d 1179 (1995). A fraud claim can be sustained simultaneously with the breach of contract claim if the fraud claim was based on an agreement not integrated into the contract at issue, such as a collateral oral agreement. OHM Remediation Servs. Corp. v. Hughes Envtl. Sys. Inc., 952 F. Supp. 120 (N.D.N.Y. 1997). In another word, as long as plaintiff can demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, a fraud claim associated with a breach of contract is sustained and tort damages can be recovered. Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F. 3d at 20.

Defendants argued that plaintiff's fraudulent inducement claim is simply a duplicate of the breach of contract claim with additional allegation that moving defendants 'had no intention to make payments'. This argument is without merits because it ignores the favorable inference

drawn from plaintiff's allegations. As alleged, plaintiff made five consecutive shipments to defendants from China to New York. Compl. ¶12. According to the parties' agreements, ACH shall pay off any outstanding shipping bills, within 15 days from arrival of the cargo, before it receives bills of lading or equivalent documents to take possession of any arrived merchandises. In our case, defendants did not make full payment to Ginter upon the shipments' arrival. At this point, defendants' nonpayment constitutes breach of contract. After this, Zhou misrepresented to Ginter that they were wiring partial payments to plaintiff in exchange of the bills of lading and further services. Compl. ¶35. To gain Ginter's reliance, Zhou produced photocopies of several bank instruments including a signed check and a completed wiring application for Ginter's reference. *Id.* Zhou's misrepresentation and bank documents purposely misled Ginter to believe that they entered into a revised agreement with varied payment terms and that defendants were performing their payment duty under this revised agreement and would make full payments soon. In reliance on Zhou's representation, Ginter continued to provide its services and advanced the costs and expenses. Compl. ¶35. Even after ACH and Zhou sold the merchandises, they did not make the payments to Ginter as promised. *See* Compl. ¶13. Whether defendants actually submitted the wiring application to the bank remains unverified. Compl.¶36. It appears that ACH and Zhou never wire the payment to Ginter and the photocopy of the wire application is just bait. *Id.*

  Based on the above factual allegations and inference, plaintiff's fraud claim does not arises out of the same facts as plaintiff's breach of contract claim. Ginter never claims it was induced to the original service agreement. Instead, it claims that ACH and Zhou virtually defrauded it into a revised agreement and misled it to believe defendants were performing their payment duty under this revised agreement. Moreover, Ginter claims that it was fraudulently induced to provide further service by continuing shipping more containers to defendants after

14

knowing defendants' failure to make full payment of the prior shipping services.  ACH and Zhou's post-contract fraudulent misrepresentation significantly distinguishes from the "precise promises spelled out in the contract between the parties."  Thus, the fraud claim in our case was based on an agreement not integrated into the contract at issue.

In general, ACH and Zhou's post-contract fraudulent misrepresentation is collateral or extraneous to the service contract.

> 2. Defendant ACH and Zhou's fraudulent misrepresentation causes special damages unrecoverable as contract damages because plaintiff might have recovered its loss by exercising its lien upon the merchandises if it were not induced to lose control of the merchandises and plaintiff is entitled to punitive damages which are usually unrecoverable as contract damages.

Relying on defendants' representation, Ginter continued to provide its services to defendants and incurred more costs and expenses. Compl. ¶35.  Without defendants' misrepresentation, Ginter would exercise its right to stoppage of delivery and shall have full right to dispose the merchandises pursuant to applicable laws.  In another word, Ginter might have recovered its loss by exercising its lien upon the merchandises if it were not fraudulently induced to lose control of the merchandises.  This equity relief is not available in a case of contract damages.

Additionally, plaintiff is entitled to punitive damages for ACH and Zhou's fraud, which is usually unrecoverable as contract damages.

Consequently, assuming all of the allegations of plaintiff's complaint to be true and drawing all reasonable inferences in plaintiff's favor, the Court must find that defendants' fraudulent misrepresentation is collateral or extraneous to the contract and there exists special damages unrecoverable as contract damages.  Accordingly, plaintiff has stated a claim of fraud against defendants and the motion to dismiss plaintiff's fifth cause of action should be denied.

POINT IV

PLAINTIFF HAS STATED A CLAIM THAT ZHOU IS
PERSONALLY LIABLE TO PLAINTIFF BECAUSE HIS
INTENTIONAL MISREPRESENTATION, BAD FAITH AND
A KNOWING VIOLATION OF LAW DEPRIVE HIM OF THE
PROTECTION FOR CORPORATE OFFICERS.

It is true that a corporation generally shields its officers from personal liability for actions taken in their official capacity. Bildstein v. Atwater, 222 A.D. 2d 545; 635 N.Y.S. 2d 88 (2d. Dept. 1995). However, intentional misconduct, bad faith or a knowing violation of law deprives corporate officers of this protection. *Id*. at 545; *See* N.Y. Business Corporation Law § 402(b) (McKinney 2007). A corporate officer is not immune from liability if he acted in bad faith as officer and committed independent torts or predatory acts against others. Gottecher v. Viet-Hoa Co., 170 A.D. 2d 648 (2d Dept. 1991); *See also* Mills v. Polar Molecular Corporation, 12 F. 3d 1170, 1177 (2d Cir. 1993). The Court in Gottecher affirms that "Courts have the authority to look beyond the corporate form to prevent fraud or to achieve equity." *Id*, at 649. Furthermore, Corporate officers are personally liable for any tort committed outside scope of their capacities as officers. Kramer v. Twin County Grocers, 151 A.D. 2d 722; 542 N.Y.S. 2d 787 (2d Dept. 1989). Recently the court went further holding that corporate officer who participates in commission of tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of his official duties and regardless of whether the corporate veil can be pierced. Espinosa v. Rand and DKSR Holding Ltd., 24 A.D. 3d 102, 806 N.Y.S. 2d 186 (1st Dept. 2005). A corporate officer "[participating] in the commission of a tort can be held personally liable even if the participation is for the corporation's benefit." Retroplic, Inc., v. 14th Street Development LLC, 17 A.D. 3d 209; 797 N.Y.S. 2d 1 (1st Dept. 2005); Rothstein v. Equity Ventures, LLC., 299 A.D. 2d 472; 750 N.Y.S. 2d 625, 627 (2d Dept. 2002) (holding that members of limited liability company may be held personally liable for fraud if they knowingly made false

representations which induced the plaintiffs to a contract, even if they committed the tort in furtherance of company business.)

In our case, plaintiff alleges that Zhou is an officer of ACH and Zhou made the misrepresentation to defraud Ginter. Compl. ¶¶6, 35. Plaintiff further alleges that Zhou represented that the partial payment was being wired and plaintiff never received the said payment. Compl. ¶¶35-37. These allegations and permissible inferences show that Zhou did act in bad faith and made false misrepresentation. He is thus personally liable for the tort committed even if it was made in furtherance of the business.

Defendants further argued that plaintiff did not allege that Zhou was the owner of the business and there is no allegation that Zhou personally benefited from the misconduct. This argument has no merit. The doctrine of equitable ownership is well-recognized in New York courts, under which an individual is deemed an "equitable owner" when it has sufficient control over the business, despite the fact that he is not a shareholder of the business. <u>Freeman v. Complex Computer Company, Inc. at etc.</u>, 119 F. 3d 1044, 1051 (2d Cir. 1997). Courts will pierce the corporate veil either upon a showing of fraud or upon complete control by the dominating entity that leads to a wrong against third parties. *Id*. It can be inferred from plaintiff's allegation that Zhou, as officer, has dominion control over affairs of ACH and treats ACH as his alter ego and uses it for fraudulent purpose. The Corporate veil should be pierced.

In summary, Zhou's intentional misrepresentation, bad faith and knowingly violation of law deprive him of the protection for corporate officers. Accordingly, Zhou is personally liable for the tort he committed.

POINT V

ALTERNATIVELY, IF THE COURT FINDS
PLAINTIFF FAILS TO STATE A CLAIM,
 <u>PLAINTIFF SHOULD BE GIVEN LEAVE TO REPLEAD</u>.

The Federal Rule of Civil Procedure 15 permits a party to amend a pleading by leave of the court. Therefore, in any event, if Defendants' motion is granted, it should be without prejudice and with leave to file an amended complaint.

CONCLUSION

Defendants' motion to dismiss should be denied or granted without prejudice, and if granted, Plaintiff should be given to leave to replead.

Dated: Flushing, New York
       December 3, 2007

Dai & Associates, P.C.

*By:*  /s/_____
Yuan Zheng, Esq. (YZ1975)
Attorneys for Plaintiff
138-18 39th Ave, Suite 1102
Flushing, New York 11354
Tel: (718) 888-8880

CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2007, the foregoing was filed electronically through the Electronic Case Filing ("ECF") system to be served by operation of the Court's ECF system upon the participating parties and by the U.S. Postal Officer's first class mail upon the non-participating party:

Xin Miao, Inc.
110-90 Dunkirk Street, 1st Floor
Jamaica, NY 11412

/s/_____
Yuan Zheng