**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
GINTER LOGISTICS SERVICE CO, LTD.,             07 civ. 8677 (LAP)(KNF)

                              Plaintiff,

   -against-

ACH FREIGHT FORWARDING, INC., JIMIN
ZHOU a/k/a JIMMY ZHOU, XIAO JI HE
d/b/a PACIFIC JIN AN TRADING, INC.
and XIN MIAO, INC.,

                              Defendants

-----------------------------------------------------------------x


**MEMORANDUM OF LAW OF DEFENDANTS**
**ACH FREIGHT FORWARDING INC. AND**
**JIMIN ZHOU a/k/a/ JIMMY ZHOU**
**IN REPLY TO PLAINTIFF'S OPPOSITION AND**
**IN FURTHER SUPPORT OF THEIR MOTION**
**TO DISMISS PLAINTIFF'S COMPLAINT**


                                        LAW OFFICES OF BING LI, LLC
                                        1350 Broadway, Suite 1001
                                        New York, NY 10018-0947
                                        (212) 967-7690
                                        Attorneys for Defendants
                                        JIMIN ZHOU a/k/a/ JIMMY ZHOU
                                        and ACH FREIGHT FORWARDING INC.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 1

    Point I
    Plaintiff's Opposition Provides Further Basis For Dismissal Of
    The Conversion And Fraud Claims. ..................................................................... 1

        A.  Plaintiff's Fraudulent Inducement Claim ........................................... 2

        B.  Plaintiff's Conversion Claim ............................................................... 4

    Point II
    The Complaint Must Be Dismissed As Against Zhou Personally. ....................... 6

    Point III
    Leave Of Court To Replead Must Be Denied Because Any
    Subsequent Amendment Will Be Futile. .............................................................. 9

CONCLUSION .................................................................................................................. 11

**PRELIMINARY STATEMENT**

Defendants ACH FREIGHT FORWARDING INC. ("ACH") and JIMIN ZHOU a.k.a. JIMMY ZHOU ("Zhou"), by and through their attorneys, LAW OFFICES OF BING LI, LLC, respectfully submit this Memorandum of Law in reply to plaintiff's opposition to and in support of their motion for an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing each of the six causes of action as against Zhou personally, dismissing the Fourth Cause of Action for Conversion and Fifth Cause of Action for Fraudulent Inducement as against corporate defendant ACH, and granting them such other and further relief as the Court deems just and proper.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S OPPOSITION PROVIDES FURTHER BASIS FOR DISMISSAL OF THE CONVERSION AND FRAUD CLAIMS.**

In opposition to Defendants' motion to dismiss, plaintiff submits to the Court certain explanatory statements made in its Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem.") and certain extrinsic documents attached to the Declaration of Yuan Zheng dated December 3, 2007 ("Zheng Decl."). These materials, while objectionable for being extraneous to the Complaint, nonetheless provides further basis for dismissal of plaintiff's conversion and fraudulent inducement claims.

Plaintiff's explanatory statements, including its typological corrections, show that it made a total of five, instead of seven, shipments of goods to the defendants and it withheld the last shipment, instead of the last two shipments, due to defendants' non-payment of its fees. Pl. Mem. fns. 1-2. Plaintiff further adds that it made "another shipment"--appearing to be the

fourth shipment under the revised schedule--"[i]n or about June 2006" which arrived in the U.S. "on or about July 19th, 2006." Pl. Mem. at 5. Elsewhere, plaintiff identifies this June 2006 shipment as the "June 26th shipment." Id., at 10. It is not clear as to when plaintiff made the last shipment, which, in any event, is a non-issue because plaintiff admits that it withheld the last shipment and disposed of the merchandise by itself. Pl. Mem. fn. 2, Compl. ¶ 14. Additionally, the Application for Transfer of Funds attached to the Zheng Declaration, while not properly authenticated or otherwise in its admissible form, appears to show that the application was dated July 28, 2006, more than one month after the June 26th shipment and almost 10 days after its arrival in the U.S. However, according to paragraph 35 of plaintiff's Complaint, defendant Zhou allegedly made false and untrue statements about wiring partial payment "[o]n or about July 13 and July 28, 2006, in an effort to wrongfully obtain the legal title to the [fourth] shipment[.]" Elsewhere, plaintiff confirms that "[plaintiff] does not dispute that it has shipped, prior to June 26, 2006, three shipments, in total of ten containers, to ACH and authorized release of these shipments to ACH." Pl. Mem. at 10.

These newly submitted statements and material, read together with the factual allegations contained in the Complaint, render plaintiff's claims for conversion and fraudulent inducement entirely "[im]plausible on its face" and insufficient to "raise a right to relief above the speculative level." Johnson & Johnson, 2007 WL 2456625, at *4-5 (citations omitted).[1]

**A.  Plaintiff's Fraudulent Inducement Claim**

The new facts asserted by plaintiff on this motion unequivocally show that plaintiff did not rely on any of the alleged fraudulent statements about making partial payment before it

---

[1] Plaintiff states, incorrectly, that the moving defendants have misconstrued "several precedents in the motion" and "allude[d] that a heightened standard of fact pleading shall apply[.]" Pl. Mem. at 7. This is not true. Nowhere in defendants' opening brief do defendants appear to advocate such a position.

made the June 26th shipment.  Paragraph 35 of the Complaint states that defendants made the false statements on July 13 and July 28, 2006.  As a result, the so-called "revised agreement" simply did not exist and plaintiff was not "fraudulently induced to provide further service by continuing shipping more containers to defendants after knowing defendants' failure to make full payment of the prior shipping services."  Pl. Mem. at 14-15.  Or else, under the circumstances, it is "[im]plausible on its face" (Johnson & Johnson, 2007 WL 2456625, at *4-5 (citations omitted)) that plaintiff had justifiably and reasonably relied on defendants' alleged false statements.  See Century Pacific, Inc. v. Hilton Hotels Corporation, 2004 WL 868211, *6, 03 Civ. 8258 (SAS) (August 21, 2004) (S.D.N.Y. Scheindlin, J.), citing Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996) ("To recover for common law fraud in New York, plaintiffs must demonstrate: (1) a misrepresentation of material fact made with knowledge of falsity; (2) justifiable reliance on such misrepresentation; and (3) resulting harm.").  As such, plaintiff fails to state a claim for fraudulent inducement.

Alternatively, the fraud claim is duplicative of the breach of contract cause of action and must be similarly dismissed.  Plaintiff argues that it suffered special damages because had it not released the June 26th shipment to defendants, it "might have recovered its loss by exercising its lien upon the merchandises[.]"  Pl. Mem. at 15.  This is specious.  First, plaintiff does not rely on any legal authority to support the position that plaintiff's release of the June 26 shipment somehow terminates its right to collect freight costs and other fees under the parties' service agreement.  As a matter of fact, plaintiff's damages of $76,318.78 sought in the Complaint represent the freight costs and fees in making all of the shipments, including the last two.  Compl. ¶ 12.  Furthermore, had plaintiff not released the June 26th shipment (i.e., the fourth shipment), plaintiff's consequential damages sought in the Complaint would have been

double the amount of $23,258.16, which was allegedly incurred in withholding the last shipment. Compl. ¶ 14.

Nor is plaintiff entitled to any punitive damages under the set of facts pleaded. The New York courts have held that punitive damages are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as "gross" and "morally reprehensible," and of "'such wanton dishonesty as to imply a criminal indifference to civil obligations'." Rocanova v. Equitable Life Assur. Socy., 83 N.Y.2d 603, 614 (1994). However, here, plaintiff fails to plead any of the required elements in support of its claim for punitive damages. As a result, plaintiff's fraud claim (with respect to the fourth shipment) is duplicative of its breach of contract claim (with respect to all of the five shipments) and must be dismissed.

### B. Plaintiff's Conversion Claim

Similarly, the newly submitted explanatory statements also make plaintiff's conversion claim entirely "[im]plausible on its face." Johnson & Johnson, 2007 WL 2456625, at *4-5 (citations omitted). Or else, the factual statements provide further basis for the finding of a duplicative cause of action as the breach of contract claim.

Plaintiff's conversion claim is predicated on the allegation that "[o]n or about July 25th, 2006, Defendant ACH and Defendant Zhou **wrongfully obtained** the shipments [i.e. the June 26th shipment], without surrendering the bills of lading therefor, and without **making any payments** attached thereto." Compl. ¶ 29 (emphasis added). Nowhere in the Complaint does plaintiff plead as to how defendants "wrongfully obtained" the June 26 shipment to satisfy one of the elements of the conversation claim. See AD Rendon, 2007 WL 2962591, *8-9 (citations omitted) ("...to establish a claim for conversion, a plaintiff must show that: '(1) the property

subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) **defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights**'") (emphasis added).  The Application for Transfer of Funds attached to Zheng Declaration, however, shows that the application was dated July 28, 2006.  Plaintiff first states in its Memorandum of Law that it "has **never negotiated** any document of title, including bills of lading, to the defendants, nor any authorization to release the goods."  Pl. Mem. at 10 (emphasis added).  Then, surprisingly, plaintiff states that "... because the June 26th shipment was made under a non-negotiable bill of lading, Plaintiff retained control over the cargo **before authorizing its release** ...."  Pl. Mem. at 10 (emphasis added).

Therefore, no matter what inference may be drawn in plaintiff's favor, the allegations and plaintiff's new statements fairly support the reading that plaintiff eventually released the June 26th shipment to defendants, though defendants allegedly obtained the shipment "wrongfully" for failing to make any payments to plaintiff.

As such, the issues as to whether plaintiff had any possessory interest in the fourth shipment within the meaning of Section 7-307 of the NYUCC, or as to whether plaintiff was a "person in the position of a seller" within the meaning of section 2-707 of the NYUCC, are moot because plaintiff does not dispute that it properly authorized release of the first three shipments and plaintiff's new statements compel a reading that release of the fourth shipment was also authorized by plaintiff.  When that happened, it will be essentially impossible for plaintiff to show that "defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights'."  AD Rendon, 2007 WL 2962591, *8-9.

In any event, the set of facts as pleaded and explained by plaintiff further compels a finding that the conversion cause of action is duplicative of the breach of contract claim. Plaintiff argues that its conversion cause of action is based on a different set of facts from those underlying the breach of contract claim. Pl. Mem. at 12. Thus, plaintiff states that while its breach of contract claim is based on defendants' failure to pay for freight and other costs, the conversion claim is based on defendants' wrongfully obtaining and selling the fourth shipment (the June 26th shipment). This is a distinction without a difference. The damages sought for conversion remain identical to that for breach of contract. See AD Renton, 2007 WL 2962591, *5 ("Thus, if plaintiff were to recover under both claims, it would in effect be paid twice."); Alliance Group Service, 406 F.Supp.2d at 170 ("An action for conversion cannot be validly maintained where damages are merely being sought for breach of contract."). Therefore, the conversion claim must be dismissed.

## POINT II

### THE COMPLAINT MUST BE DISMISSED AS AGAINST ZHOU PERSONALLY.

In opposition to defendants' motion to dismiss the complaint as against Zhou personally, plaintiff argues that because plaintiff alleges that Zhou, as an officer of ACH, made misrepresentations about wiring partial payment to plaintiff, it may be inferred that "Zhou did act in bad faith and made false misrepresentation." Pl. Mem. 17. This professed position for Zhou's personal liability is the sine qua non of its dismissal and the in terrorem pleading made for the sole purpose of harassing and impugning the reputation and integrity of the individual defendant should not be condoned by the Court.

As shown in the foregoing, plaintiff's fraud claim with respect to the fourth shipment is not "plausible on its face" in that plaintiff made the shipment in or about June, 2006 (Pl. Mem.

at 5), but the alleged misrepresentation about wiring partial payments did not occur until July 13 and/or July 28, 2006 (Compl. ¶ 35). Furthermore, plaintiff's conversion claim with respect to the June 26th shipment is similarly "[im]plausible on its face" because plaintiff admits that it eventually authorized release of this shipment. Pl. Mem. at 10 ("... Plaintiff retained control over the cargo before authorizing its release ...").

Furthermore, assuming, for the purposes of the within motion, "Zhou did act in bad faith and made false misrepresentation," plaintiff does not rely on any legal authority to support the proposition that a corporate officer's "bad faith" and "false misrepresentation," without anything else, will constitute sufficient legal basis for the officer's personal liability. The case law relied on by the Moving Defendants in their opening brief and the cases cited by the plaintiff unequivocally provide that the prerequisite to a corporate officer's personal liability is the officer's commission and/or participation in an independent tort, which plaintiff fails to show in the Complaint.

As a matter of fact, plaintiff's reliance on the McKinney's Business Corporation Law § 402(b) and Bildstein v. Atwater, 222 A.D.2d 545 (2d Dept. 1995) is inapposite as they relate only to the personal liability of corporate directors, whereas here there is no allegation that Zhou was a director of ACH. Even assuming Zhou is, the Second Circuit case, Mills v. Polar Molecular Corporation, 12 F.3d 1170 (2d Cir. 1993), also relied on by the Moving Defendants, actually strengthens defendants' position that Zhou should not be personally liable. In Mills, former corporate managers and sales representatives sued the corporate officers and directors alleging securities fraud, RICO violations, breach of contract, and breach of fiduciary duty. In support of the personal liability claim against the corporation's president, plaintiffs contended that the president committed a tort by "committing himself ... to good faith performance of the

- 7 -

contracts and then breaching." The Court of Appeals rejected the argument, stating that: "Every party to a contract commits himself to goof faith performance. That does not transmute breach of contract into a tort." Id. at 1177.

The several other cases cited by the plaintiff similarly support the defendants' position that Zhou should not be personally liable for the corporation's breach of the shipping agreement in question. In Kramer v. Twin County Grocers, 151 A.D.2d 722 (2d Dept. 1989), the Appellate Division granted two corporate officers' motion for summary judgment dismissing the complaint as against themselves, holding that "[t]here is nothing in the record to establish that those parties committed any tort outside the scope of their capacities as shareholders and officers of the defendant and [a third-party corporate defendant]." In Rothstein v. Equity Ventures, LLC, 299 A.D.2d 472 (2d Dept. 2002), the Appellate Division, in affirming the lower court's dismissal of plaintiffs' fraud and negligence causes of action, stated that while members of limited liability companies may be held personally liable if they participated in the commission of a tort, the plaintiffs failed to allege that the corporate officers defendants knowingly made any false representations which induced the plaintiffs to purchase the real property in question.

The case Espinosa v. Rand and DKSR Holding Ltd., 24 A.D.3d 102 (1st Dept. 2005) is readily distinguishable from the case at bar. In Espinosa, the individual officer of a landlord corporation allegedly misled the plaintiff tenants by telling them that lead paint had not been used in the apartment building for more than 10 years. The Appellate Division held that the individual officer was not entitled to dismissal of the complaint against him because the misrepresentation, if proven and shown to have induced plaintiffs' detrimental reliance, would provide basis for imposing liability on officer individually. Here, plaintiff's fourth shipment

(i.e. the June 26th shipment) was made prior to the alleged misrepresentations made by Zhou. As such, there is no factual basis to support plaintiff's detrimental reliance in making the June 26th shipment.

Plaintiff also attempts to rescue its personal liability claim against Zhou by advancing the theory of piercing the corporate veil based on the doctrine of "equitable ownership." Pl. Mem. at 17.  However, plaintiff does not allege any facts in the Complaint in support of the application of the legal theory.  See TNS Holdings Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339 (1998) (holding that under New York law, a party seeking to pierce the corporate veil "bear[s] a heavy burden"  in showing that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.  See also EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005) ("To avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim.").  As a result, the Court must disregard this argument in toto.

### POINT III

**LEAVE OF COURT TO REPLEAD  MUST BE DENIED BECAUSE ANY SUBSEQUENT AMENDMENT WILL BE FUTILE.**

Plaintiff requests leave of court, without a properly noticed and filed cross-motion, to file an amended pleading under Fed.R.Civ.P. 15.  Pl. Mem. at 18.  However, the Court should deny the application because any subsequent amendment would be futile.

While leave to amend a party's pleading "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), "the district court has the discretion to deny leave if there is a

good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002); see Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend."). Here, no matter how plaintiff intends to amend the conversion and fraud causes of action, plaintiff's rights for these claims will remain implausible on their face. Specifically, the allegations and plaintiff's explanatory statements show that plaintiff authorized the release of the June 26th shipment and defendants did not exercise any unauthorized dominion over the merchandise; that plaintiff made the fourth shipment on June 26, 2006 months before the alleged fraudulent misrepresentation was made; and that both conversion and fraud claims are duplicative of plaintiff's breach of contract cause of action. As such, a subsequent amendment to the complaint will not withstand a new motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and is futile.

## **CONCLUSION**

For the reasons stated in the foregoing, the Moving defendants ACH Freight Forwarding Inc. and Jimin Zhou a/k/a Jimmy Zhou request that the Court grant their motion in its entirety and that the Court award them such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: New York, New York
       December 13, 2007

LAW OFFICES OF BING LI, LLC
Attorneys for Defendants
ACH FREIGHT FORWARDING INC.
and JIMIN ZHOU a/k/a JIMMY ZHOU

By: /s/
    Bing Li (BL 5550)
    1350 Broadway, Suite 1001
    New York, NY 10018-0947
    (212) 967-7690